JOHN R. HIEBER, Plaintiff-Appellant, v. UPTOWN NATIONAL BANK OF CHICAGO, Defendant-Appellee.

First District (4th Division)   No. 1—88—2870

Opinion filed May 24, 1990.

Thomas A. Else, Jr., of Oak Lawn, for appellant.

John C. Livensparger, of Eklund & Eklund, of Chicago, for appellee.

PRESIDING JUSTICE McMORROW delivered the opinion of the court:

Plaintiff John R. Hieber appeals from the trial court's entry of summary judgment in favor of defendant Uptown National Bank on plaintiff's suit to enforce the terms of a trust agreement executed by Alma Evans (Evans) prior to her death. In entering summary judgment, the trial court determined that the trust agreement failed because it was not funded prior to Evans' death. The trial court also concluded that the defendant properly refused to honor bank instruments executed by Evans to plaintiff in order to fund the trust, because these instruments were presented by plaintiff to defendant for payment after Evans' death. We affirm.

The record shows that Evans executed a power of attorney in favor of plaintiff on July 1, 1985. Approximately a month thereafter, Evans executed a trust agreement naming plaintiff as trustee and beneficiary. In order to fund the trust, Evans also executed bank instruments enabling plaintiff to withdraw funds from accounts held by defendant. Two weeks after she executed the trust agreement and the bank instruments, Evans died. Later on the same day of Evans' death, plaintiff presented the bank instruments to defendant for payment. Defendant refused to honor the instruments because of Evans' death. Plaintiff filed suit to enforce the trust agreement and its funding by the instruments executed by Evans with respect to her accounts held by defendant. The trial court entered summary judgment in favor of defendant, and plaintiff appeals.

██ █ Plaintiff argues that Evans' trust was valid following her death, notwithstanding plaintiff's failure to present the bank instruments for payment while Evans was alive. We disagree. In order to be valid, a trust must be funded by an assignment of property from the settlor to the trustee. (See, *e.g.*, *Gurnett v. Mutual Life Insurance Co.* (1934), 356 Ill. 612, 191 N.E. 250.) "A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it." (Ill. Rev. Stat. 1985, ch. 26, par. 3—409(1).) Thus, a check or draft "may effect a gift of money [to the trust] on the honoring of the instrument by the drawee or payor, but until it is accepted or honored no gift is completed and the death of the drawer will destroy its effectiveness." (G. Bogert, The Law of Trusts and Trustees, ch. 9, §142, at 33-34 (2d rev. ed. 1979).) Because Evans died before the checks she had drafted were accepted for payment by defendant, the trust created by Evans did not survive her death. The power of attorney executed by Evans in favor of plaintiff also did not survive Evans' death, since the power of attorney was coupled to the trust, and the trust was not effective upon Evans' death. See, *e.g.*, *Wallace v. Foxwell* (1911), 250 Ill. 616, 95 N.E. 985.

To support his position that Evans' execution of bank documents operated as an assignment of the funds prior to her death, plaintiff relies upon *First National Bank v. O'Byrne* (1913), 177 Ill. App. 473. In that case, the court held that a settlor's execution of bank instruments prior to the settlor's death constituted a valid assignment of funds to the settlor's trust. However, the holding of *First National Bank* is in direct conflict with the Illinois statutory provision that "[a] check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and

the drawee is not liable on the instrument until he accepts it." (Ill. Rev. Stat. 1985, ch. 26, par. 3—409(1).) For this reason, subsequent decisions have declined to follow the ruling of *First National Bank.* (*In re Estate of Austin* (1927), 243 Ill. App. 386.) On this basis, we also decline to follow *First National Bank* in the instant cause. The remaining cases cited by plaintiff are inapposite, since in none of the decisions did the settlor die before the bank instruments were presented for payment.

■ Plaintiff argues that the defendant was liable for the amounts stated in the bank instruments executed by Evans because the defendant failed to give plaintiff timely written notice of dishonor for these instruments. We disagree. Under section 3—508 of the Uniform Commercial Code, the defendant was obligated to give written notice of dishonor of the bank instruments to the payor of these instruments. (See Ill. Rev. Stat. 1985, ch. 26, par. 3—508.) As Evans was the payor, the bank was obligated to give written notice of dishonor to Evans. Plaintiff has cited no authority to support the proposition that, under section 3—508, defendant was also obligated to give written notice of dishonor to the payee, *i.e.,* to plaintiff. *Cf. Katz v. Belmont National Bank* (1986), 112 Ill. 2d 64, 491 N.E.2d 1157 (employees whose payroll checks were returned for insufficient funds could not state a claim against defendant bank, since only possible right to immediate possession of funds was by employer who had account relationship with bank).

In addition, section 4—405 of the Uniform Commercial Code accorded to the defendant bank the discretion to refuse payment once the defendant learned of Evans' death. (See Ill. Rev. Stat. 1985, ch. 26, par. 4—405.) There is nothing in section 4—405 that required the defendant to give written notice to plaintiff of the defendant's refusal to honor the bank instruments in light of Evans' death. Accordingly, we reject plaintiff's claim that the defendant is liable for the amounts stated in the bank instruments executed by Evans on the theory that defendant should have given plaintiff timely written notice of dishonor.

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

JIGANTI and LINN, JJ., concur.